UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

BURCKHART SEARCH GROUP, INC., and
ANGEL BURCKHART LOPEZ,

    Plaintiffs,

    v.

DORAL FINANCIAL CORPORATION,
et. al.,

    Defendants.

Civil No. 11-1565 (JAF)

**OPINION AND ORDER**

Plaintiffs sue seeking relief under, inter alia, 42 U.S.C. §§ 1983, the Clayton Act, 15 U.S.C. §§ 12–27, and the Sherman Act, 15 U.S.C. §§ 1–7. (Docket No. 5.) Pending before this court are several motions for dismissal, two of which we resolve in this Opinion.[1] Codefendants Judge Wanda Cruz-Ayala, Judge Olga García-Vincenty, and Judge Isabel Llompart-Zeno ("the Judges") move for dismissal under Federal Rule of Civil Procedure 12(b)(6). (Docket No. 20.) Plaintiffs oppose. (Docket No. 33.) Additionally, codefendants Doral Financial Corporation ("DFC"), Doral Mortgage Bank, Enrique Ubarri, Laura Crumley, along with Glen Wakeman,

---

[1] We note, but do not reach, the other motions to dismiss brought by: Codefendants Javier Collazo-Correa, Agustín Collazo-Mojica, his spouse, and their conjugal partnership (Docket No. 22); codefendants John García Nokonechna and Jeanette Negrón Ramírez (Docket No. 31); codefendants Temporary Professional Integrated Services Corporation and Professional Integrated Service Corporation (Docket No. 40); and codefendants Lesbia Blanco-Rivera, Luis Díaz-García, and the conjugal partnership between them (Docket No. 45).

Carla Wakeman, and their conjugal partnership (together "Movants") move for dismissal under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). (Docket No. 30.) Plaintiffs oppose. (Docket No. 48.)

## I.

## Factual Allegations

We derive the following summary of the allegations from the parties' pleadings and motions. (Docket Nos. 5; 20; 30; 33; 48.) Coplaintiff Burckhart Search Group Incorporated ("BSG") offers services in Puerto Rico such as the "search, evaluation and recruitment of professional executive personnel for high management positions in commerce and industry." (Docket No. 5 at 4–5.) Codefendant Careers Incorporated ("Careers") offers the same type of recruiting services as Plaintiffs, and codefendant DFC has employed such recruiting services to find officers for the corporation. (Id.)

In their Amended Complaint of fifty-seven pages, Plaintiffs allege a galactic array of injustices, intrigues, and conspiracies against BSG, beginning with a conspiracy to "terminate Plaintiffs' contractual relationship with DFC" and displace them as DFC's provider of recruiting services. (Id. at 11.) On May 7, 2007, Plaintiffs brought a civil action ("the Commonwealth case") in the Commonwealth Court of First Instance in San Juan Puerto Rico, under Judge Wanda Cruz-Ayala, "for breach of contract on commissions due demanding the payment of $80,000 for having found the candidate ultimately selected by defendant Doral Financial Corporation to occupy the position of Senior Vice President and Director of Internal Auditing." (Id. at 10 (citing Burckhart Search Group, Inc. v. Doral Financial Corporation,

No. KCD 2007-0478 (507) (Trib. De Primera Instancia, San Juan, P.R. filed May 7, 2007))). On July 7, 2009, the parties in the Commonwealth case met for a settlement conference, and discussed a proposed settlement agreement in which "BSG would move for the voluntary dismissal of its claim for commissions due, with prejudice" in return for $50,000. (Id. at 14.) A few days after the meeting, however, negotiations failed because of what Plaintiffs viewed as additional and unfair terms added by DFC. (Id. at 15.) No settlement was reached.

On September 24, 2009, Judge Cruz-Ayala denied Plaintiffs' motion to "to compel compliance with the judicial settlement" terms they desired. (Id. at 23.) Plaintiffs then concluded that Judge Cruz-Ayala acted in a biased manner because of her refusal to compel settlement or compel additional discovery. (Id. at 16, 22.) Plaintiffs filed a motion for her recusal on October 9, 2009, which was denied by Judge García-Vincenty on December 18, 2009. (Id. at 26, 27.) Judge García-Vincenty denied Plaintiffs' subsequent motion for reconsideration and it became final on January 22, 2010, and "not amenable to be revised by interlocutory appeal." (Id. at 27.)

Indefatigable, Plaintiffs next targeted Judge García-Vincenty—who they claim to be biased due to an attenuated connection to past counsel or past board members of DFC—and filed a new motion to set aside her denial of the original recusal motion, which Judge García-Vincenty denied on March 3, 2010. (Id. at 27, 33.) Subsequently, Plaintiffs filed a "Memorandum for the Record" to protest the proceedings with the Judge Administrator for the Court of First Instance of San Juan, Judge Llompart-Zeno, on March 10, 2010, which they claim was ignored. (Id. at 33.)

Finally, over four years after initiating the Commonwealth case, Plaintiffs brought the present suit in this court on June 16, 2011.[4] (Docket No. 1.) In addition to the Judges, Plaintiffs have also named as codefendants various corporate officers of DFC, Careers, and other related corporations, as well as various attorneys representing the defendants in the Commonwealth case (together "the private defendants"). (See Docket No. 5 at 8–10.)

## II.

## **Motion to Dismiss Standard**

### A.   **Rule 12(b)(1)**

A defendant may move to dismiss an action against her under Federal Rule of Civil Procedure 12(b)(1) for lack of federal subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). "When a defendant moves to dismiss for lack of federal subject matter jurisdiction, 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

Rule 12(b)(1) provides a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001). A movant may base a challenge to the sufficiency of the plaintiff's assertion of subject matter jurisdiction solely on the pleadings. Id. at 363. In that case, we take the

---

[4] Finally, on June 16, 2011, Judge Cruz-Ayala issued an order in which she announced that she had "chosen to abstain motu propio" from hearing the case, and referred it to Judge Aileen Navas-Auger. (Docket No. 5 at 54.) In response, Judge Navas-Auger also decided to abstain from hearing the case and it was "referred to the Hon. Rebecca de León Ríos, Coordinator Judge for Civil Matters" on July 12, 2011. (Id. at 56.)

plaintiff's "jurisdictionally-significant facts as true" and "assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Id. at 363; see Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 197 (1st Cir. 2000).

**B.     Rule 12(b)(6)**

A defendant may move to dismiss an action, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing such a motion, we "accept[] all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).

"[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). In considering a complaint's adequacy, we disregard "statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (internal quotation marks omitted). We then take as true what remains, "[n]onconclusory factual allegations . . . even if seemingly incredible." Id. On the basis of those properly pled facts, we assess the "reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13.

**III.**

**12(b)(1) Analysis**

Before addressing the sufficiency of the Complaint, we address Movants' arguments under Rule 12(b)(1). Specifically, they argue that the Rooker-Feldman doctrine precludes

Civil No. 11-1565 (JAF) -6-

jurisdiction and, in the alternative, argue for Younger abstention.[5] (Docket No. 30 at 12–16.) We reject these arguments.

**A.     Rooker-Feldman**

Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over complaints that invite review of state or Commonwealth court judgments. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. 1517, 1521 (2005) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923)); see also Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008) (citing Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6 (1st Cir. 2004)) (noting that Puerto Rico is treated as a state for Rooker-Feldman purposes). The Rooker-Feldman doctrine implies subject-matter jurisdiction. New Eng. Power and Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 66 n.1 (1st Cir. 2002). The doctrine "applies only in the 'limited circumstances' where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 23–24 (1st Cir. 2005) (emphasis added) (citing Exxon Mobil Corp., 125 S. Ct. at 1526); see also id. at 24 ("If federal litigation is initiated before state

---

[5] Courts in this circuit disagree as to whether Younger abstention is jurisdictional and, thus, properly raised under Rule 12(b)(1). See Mass. Delivery Ass'n v. Coakley, No. 10-11521, 2011 U.S. Dist. LEXIS 38973 at *3–*4 (D. Mass. Apr. 8, 2011) (comparing district court cases within First Circuit). We note, however, that Justice Scalia has noted that Younger abstention has been "treated as jurisdictional" by the Supreme Court. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 100 n.3 (1998). We need not explore the issue further, however, as we quickly dispose of the argument, and "the parties do not dispute the [issue], and therefore the question is academic." Christian Action Network v. Maine, 679 F. Supp. 2d 140, 143 n.2 (D. Me. 2010).

proceedings have ended, then—even if the federal plaintiff expects to lose in state court and hopes to win in federal court—the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction.").

In the present case, however, the Commonwealth case is nowhere near finished, as the Plaintiffs' detailed summary of the saga indicates. Unfortunately for this court, the interlocutory order touted by Movants as "final" and "unappealable" cannot provide the "ending" necessary to invoke the Rooker-Feldman doctrine; the case they invoke, Federacion de Maestros de Puerto Rico, 410 F.3d 17, proves inapposite. There, the First Circuit noted that state or Commonwealth proceedings could be considered to have "ended" for Rooker-Feldman purposes "if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated." Id. at 25. Nothing in the pleadings in the present case indicates that Plaintiffs have ever litigated federal questions in the ongoing Commonwealth case, much less reached a resolution. The "final" interlocutory order at issue—denying Plaintiffs' motion for the recusal of Judge Cruz-Ayala—dealt solely with questions of Commonwealth law.

**B.     Younger Abstention**

We reject Movants' arguments for Younger abstention. Although "frequently associated with state criminal prosecutions, it has been extended to certain 'coercive' civil cases." Rossi v. Gemma, 489 F.3d 26, 34 (1st Cir. 2007) (citing Maymo-Melendez v. Alvarez-Ramirez, 364

F.3d 27, 31 & n.3 (1st Cir. 2004)).[6] Abstention under Younger "is appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Id. at 37–38. Assuming that the first and third factors have been met,[7] we find that the Commonwealth case does not provide a sufficiently important state interest to fall within Younger's reach.

The Commonwealth case, brought by Plaintiffs—private parties—against other private parties centers on a claim of tortious interference with a contract. The "important state interest," traditionally found in criminal or "coercive" civil proceedings, is lacking. See Maymo-Melendez, 364 F.3d 27, 31 n.3 (1st Cir. 2004). The First Circuit has noted that "[s]tate proceedings can sometimes implicate these interests even when the proceedings are initiated by private actors." Rossi, 489 F.3d at 36 (citing Bettencourt v. Bd. of Registration in Med., 904 F.2d 772, 777 n.6 (1st Cir. 1990)). In the present case, however, nothing in the pleadings

---

[6] We note that Plaintiffs bring, inter alia, § 1983 claims for damages, and the First Circuit has "recognized that a § 1983 damages award may interfere with a state proceeding because it can have the same practical effect as a declaratory judgment: The federal court has produced a ruling on the merits that the federal plaintiff can then use to alter the state proceeding." Rossi, 489 F.3d at 37 (1st Cir. 2007) (citing Landrigan v. City of Warwick, 628 F.2d 736, 743 (1st Cir. 1980)). The First Circuit has not decided "whether abstention doctrines are only available to challenge the exercise of a federal court's equitable power, or alternatively, whether they may apply to actions for damages as well . . . . Concluding, as we do, that abstention is unwarranted here in any event, we need not go further in unraveling these complexities." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 517 (1st Cir. 2009).

[7] But "[e]ven if [Plaintiffs] have not yet actually raised their [constitutional claims] in state court, a point we do not decide, there has been no showing that state procedural rules prevent them from raising such a claim." Rossi, 489 F.3d at 35.

implicates an important state interest at stake in the litigation,[8] and the mere existence of parallel litigation does not necessitate dismissal: The Supreme Court "has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Exxon Mobil Corp., 125 S. Ct. at 1526–27 (citing McClellan v. Carland, 217 U.S. 268, 282 (1910)).

## IV.

## 12(b)(6) Analysis

Having determined that we have jurisdiction to hear the case, we finally turn to the merits of the allegations, and find that Plaintiffs have failed to state a claim.

**A.     Judicial Immunity**

The Judges argue that judicial immunity shields them from liability in the present suit.[9] (Docket No. 20 at 35–37.) We agree. The Judges are "protected by absolute immunity from civil liability for any normal and routine judicial act." Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (citing Stump v. Sparkman, 435 U.S. 349, 356–57 (1978)). Regardless of how erroneous an alleged action might be, "how injurious its consequences, how informal the proceeding, or how malicious the motive," absolute immunity applies short of "actions taken in the clear absence of all jurisdiction." Id. Plaintiffs do not allege that the Judges' acts were not judicial

---

[8] If the "important state interest" prong could be satisfied by the mere existence of ongoing state litigation, every action in a state court would qualify, defeating the purpose of the requirement. Here, Plaintiffs do not seek to attack a post-judgment enforcement mechanism in the state courts. See Rossi, 489 F.3d at 36. Plaintiffs have alleged no coercive enforcement of judgment—there has been no judgment in the case—or attachment of property.

[9] We do not address the Judges' further arguments, (Docket No. 20), as we reach our decision based on the grounds of judicial immunity.

in nature.[10] Id. Moreover, we reject Plaintiffs' conclusory allegation that the Judges acted "in the absence of jurisdiction." (Docket No. 5 at 53.) The Supreme Court has stated that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."[11] Stump, 435 U.S. at 357. While the private defendants cannot invoke judicial immunity, we find other reasons to dismiss all of Plaintiffs' claims against them, as discussed below.

**B.  § 1983 Claims**

Movants argue that Plaintiffs' § 1983 claims fail because they do not allege state action. We agree. As the Supreme Court has explained, § 1983 provides a remedy for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" made "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ." 42 U.S.C. § 1983. "If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal." Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005). "For [Defendants] to have acted under color of state law, their actions must be 'fairly attributable to the State.'" Id.

> [T]he Supreme Court articulated a two-part test that must be satisfied before it can be said that the conduct allegedly causing the

---

[10] Plaintiffs also offer an exhaustive summary of the Judges' alleged misdeeds in other civil actions. (Docket No. 5 at 10–42.) As discussed in Part I, none of the conduct alleged relates to anything other than judicial acts and, as such, proves useless in the face of judicial immunity.

[11] The example used in Stump of a hypothetical judge acting without jurisdiction was that of an imaginary probate judge who decides to try a criminal case. 435 U.S. at 357 n.7. Plaintiffs here allege no such extreme behavior.

> deprivation of a federal right [is] fairly attributable to the State:
> First, the deprivation must be caused by the exercise of some right
> or privilege created by the State or by a rule of conduct imposed by
> the State or by a person for whom the State is responsible . . . .
> And, second, the party charged with the deprivation must be a
> person who may fairly be said to be a state actor.

Id. at 4 n.10 (internal quotation marks omitted).

The First Circuit has employed three separate tests to determine whether a private party may be characterized as a state actor: The state compulsion test, the nexus/joint action test, and the public function test.[12]  Sanchez v. Pereira-Castillo, 590 F.3d 31, 51–52 (1st Cir. 2009) (citing Estades-Negroni, 412 F.3d at 5).

Plaintiffs fail to allege that the private defendants—business people, corporate executives, and attorneys—constitute state actors under any of the three tests. Plaintiffs allege no conduct beyond business decisions and the subsequent litigation, and certainly no conduct that could constitute state action. Beyond the existence of the Commonwealth case itself, Plaintiffs have alleged no coercive Commonwealth action, no position of interdependence between the Commonwealth and the private defendants, and no performance of a public function by the private defendants. The Supreme Court has explained that "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color

---

[12] Under the state compulsion test, a private party is characterized as a state actor when the state exercises coercive power or significant encouragement, such that the conduct must be deemed to be that of the state. Estades-Negroni, 412 F.3d at 5 (citations omitted) (internal quotation marks omitted). The nexus/joint action test characterizes a private party as a state actor when the state is in a position of interdependence with the private party, such that it was a joint participant in the relevant conduct. Id. Finally, the public function test characterizes a private party as a state actor if she performs a public function that is traditionally the exclusive prerogative of the state. Id.

of state law' within the meaning of § 1983." Polk County v. Dodson, 454 U.S. 312, 318 (1981). And "participation by a private party in litigation, without more, does not constitute state action." Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980).

Plaintiffs also claim that Defendants conspired to violate their rights to due process and equal protection of the law.[13] However, the allegations underlying the conspiracy claim are nothing more than a summary of the judicial decisions and proceedings in Commonwealth court. Plaintiffs frequently mention a "conspiracy" by Defendants to interfere with the contract, (Docket No. 5 at 12, 16), but only include a passing reference to a "conspiracy of silence and concealment" by the Judges, who Plaintiffs allege were busy "abetting and sheltering defendants in their conspiratorial design to rob plaintiff of his property and contractual rights." (Id. at 43). As discussed above, judicial immunity protects the Judges from these claims, and such conclusory allegations without more do not properly allege a civil rights conspiracy. Plaintiffs have neither characterized any of the private defendants as state actors nor established a claim for a constitutional violation under § 1983.

**C.   Res Judicata**

We reject Plaintiffs' next argument—that res judicata should govern the outcome of this case because the parties in the Commonwealth case almost reached a settlement. Moreover, even if the parties in that case had reached a settlement or resolution, Plaintiffs' argument would

---

[13] Although "conspiracies may be actionable under section 1983, it is necessary that there have been, besides the agreement [among conspirators], an actual deprivation of a right secured by the Constitution and laws." Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006) (quoting Landrigan, 628 F.2d at 742) (internal quotation marks omitted). Plaintiffs do not actually specify that the participants in the Commonwealth case formed such an agreement.

still fail. Puerto Rico law determines the preclusive effect to be given to a Commonwealth judgment in federal court. Oliveras v. Miranda Lopo, 800 F.2d 3, 6 (1st Cir. 1986). The relevant Puerto Rico Code provision governing "res judicata" requires "the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." 31 L.P.R.A. § 3343 (2009). In other words, Plaintiffs' addition of the new parties and new causes of action in the present suit bars any invocations of res judicata. See Catullo v. Metzner, 834 F.2d 1075, 1078 (1st Cir. 1987) ("Plaintiff's suit for breach of the settlement agreement alleges a new cause of action which could not have been brought in the previous suit . . . . Absent perfect identity between the causes, res judicata poses no bar.").

**D.     Antitrust Claims**

The First Circuit has explained that the "line is not always clear between antitrust violations and ordinary business wrongs, such as breach of contract or tortious interference." E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, 357 F.3d 1, 4 (1st Cir. 2004). In the present case, however, none of Plaintiffs' factual allegations even come close to stating a claim for an antitrust violation; "antitrust claims are concerned not with wrongs directed against the private interest of an individual business but with conduct that stifles competition." Id. (citing Brown Shoe Co. v. United States, 370 U.S. 294, 344 (1962)).

Here, Plaintiffs allege that certain codefendants such as DFC and Careers formed a conspiracy "to displace plaintiff from its position as provider of search and recruiting services for Doral Financial Corporation's high management." (Docket No. 5 at 46.) Plaintiffs allege that the private defendants conspired "to restrain interstate trade in such services, and to

preclude and displace plaintiff and other providers of search and recruiting services." (Id.) Beyond this perfunctory reference to "other providers," the factual allegations revolve exclusively around Plaintiffs and the contract. Essentially, Plaintiffs allege that Careers took a lucrative contract from them. Parroting the language of antitrust statutes does not raise these allegations to the level of an antitrust violation.

To show an antitrust violation, Plaintiffs would have to "show that the new arrangement would have anti-competitive effects outweighing the legitimate economic advantages that it might provide."[14] E. Food Servs., Inc., 357 F.3d at 5 (citing U.S. Healthcare, Inc. v. Healthsource, Inc., 986 F.2d 589, 595 (1st Cir. 1993)). But Plaintiffs offer no facts regarding the market for recruiting services, the percentage of the market represented by the lost contract, or any information as to other providers of such services. Their threadbare allegations must fail; given the facts as alleged, this is "essentially a contract dispute with possible attendant tort claims; and it is not a plausible antitrust case, however tempting may be the lure of treble damages and attorney's fees." Id. at 3.

---

[14] Normally, "antitrust claims under section 1 of the Sherman Act ordinarily require a burdensome multi-part showing: That the alleged agreement involved the exercise of power in a relevant economic market, that this exercise had anti-competitive consequences, and that those detriments outweighed efficiencies or other economic benefits." Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield, 373 F.3d 57, 61 (1st Cir. 2004). This is called the "rule of reason calculus." Id. Antitrust plaintiffs can circumvent the rule of reason calculus if they can frame their claim within certain "per se rubrics," or "categories (e.g., naked horizontal price fixing) in which liability attaches without need for proof of power, intent or impact." Id. (citing E. Food Servs., 357 F.3d at 4 & n.1.) Plaintiffs in the present case, however, do not allege any per se violations, nor do they lay out any arguments or facts falling under the rule of reason calculus.

### E. Access to the Courts

Returning to § 1983, Plaintiffs allege that the Defendants' actions have deprived them of their constitutional right of access to the courts. (Docket No. 5 at 50.) It can be a "violation of the Fourteenth Amendment, for state officials to deny a person adequate, effective, and meaningful access to the courts . . . . But theory is one thing and reality is quite another. As a practical matter, the plaintiff's effort to limn a denial of access to the courts falls short." Rogan v. City of Boston, 267 F.3d 24, 28 (1st Cir. 2001) (citations omitted) (quoting Germany v. Vance, 868 F.2d 9, 11 (1st Cir. 1989)) (internal quotation marks omitted).

As discussed above in Part IV.A., judicial immunity protects the Judges. Plaintiffs again spend four pages bemoaning the Judges' judicial acts—acts absolutely protected by judicial immunity. Plaintiffs never actually elaborate upon their allegations of impartiality or explain how they were supposedly denied access to the courts beyond the rejection of the motions for forced settlement and recusal, "and although the rhetoric of constitutional injury reverberates from the pages of [Plaintiffs'] briefs, the record contains no evidence of a violation sufficient to relate the rhetoric to the reality of events." Id. at 29 (citations omitted) (internal quotation marks omitted).[15]

### F. Tortious Interference with Contractual Relations

We turn now to the Plaintiffs' Commonwealth claims for tortuous interference with the contract, noting that "the decision whether to exercise supplemental jurisdiction is left to the

---

[15] Moreover, the case cited by Plaintiffs, Caperton v. A. T. Massey Coal Co., 556 U.S. 868 (2009), proves inapposite. Caperton dealt with an "extraordinary" situation with factors—such as elected state judges and pecuniary interest in the litigation—that simply are not present in this case.

broad discretion of the district court." Vera-Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir. 1995) (citing Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991)). "In an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (citing Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287–88 (6th Cir. 1992)). After examining the totality of the circumstances, we have determined that this case qualifies for a short-lived retention.[16]

However, Plaintiffs' claim proves short-lived. Movants argue that Plaintiffs have failed to state a claim for tortuous interference with a contract, and we agree.[17] To establish a cause of action for interference with a contractual relationship under Puerto Rico's general tort statute, Article 1802 of the Civil Code, 31 L.P.R.A. § 5141,[18] a plaintiff must show "(a) the existence

---

[16] We "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over supplemental Commonwealth law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, dismissal of federal anchor claims will trigger dismissal of supplemental state-law claims. Id. But this is no ordinary case; the Commonwealth case (which Plaintiffs hoped to settle for a mere $50,000) continues to grind on after four years of vigorous litigation but remains stalled, as Plaintiffs seem to relentlessly request the recusal of each new judge to get involved. Here, the factors of convenience and fairness to the parties weigh strongly in favor of retaining jurisdiction. And the factors of judicial economy and comity do not militate against retention of jurisdiction; the marginal cost to this court of disposing of the additional claim is low, especially compared to the impasse that remains in the Commonwealth court. We do not offend the doctrine of comity, as the issue does not involve an unsettled area of Commonwealth law, and an efficient decision will reduce the burden of litigation not only on the parties, but also on our sister courts. See Rodriguez, 57 F.3d at 1177.

[17] Before we begin, we note that to the extent the Plaintiffs intended to include the Judges in their allegations of contractual interference, the claim cannot stand. As discussed above in Parts Part IV.A. and IV.E, supra, the Amended Complaint alleges conduct comprised of judicial acts by the Judges, which are protected by judicial immunity.

[18] The Plaintiffs never actually offer any caselaw or statutes to ground their claim, but the Supreme Court of Puerto Rico has recognized a claim for tortious interference under Article 1802. See Gen. Office Prods.v. A.M. Capen's Sons, 115 D.P.R. 553, 115 P.R. Offic. Trans. 727, 734 (1984)).

of a contract; (b) that the defendant had prior knowledge of the contract; (c) that the plaintiff suffered damages; and (d) that a causal relationship exists between defendants' actions interfering with the contract and the damages suffered by plaintiff." MVM Inc. v. Rodriguez, 568 F. Supp. 2d 158, 171 (D.P.R. 2008) (citing Jusino Figueroa v. Walgreen's of San Patricio, Inc., 155 D.P.R. 560, 575–76 (2001)). Moreover, "to be liable, a defendant must have 'acted tortiously, with knowledge of the contract's existence.'" New Comm Wireless Servs. v. Sprintcom, Inc., 287 F.3d 1, 10 (1st Cir. 2002) (quoting Gen. Office Prods. Corp. v. A.M. Capen's Sons, Inc., 115 D.P.R. 553, 115 P.R. Offic. Trans. 727, 734 (1984)). This means that "the plaintiff must show that the defendant intended to interfere with the contract, knowing that this interference would cause injury to the plaintiff." Id. However, liability for tortuous interference does not lie "against a defendant when the underlying prejudicial contract has no fixed period of time. In other words, . . . the third person interfering with said contractual relation will not be held liable in an action for damages for tortuous interference if the contractual relation is terminable at the parties' will." Leopoldo Fontanillas, Inc. v. Luis Ayala Colon Sucesores, Inc., 283 F. Supp. 2d 579, 588 (D.P.R. 2003) (quoting A.M. Capen's Co., v. Am. Trading and Prod. Corp., 200 F. Supp. 2d 34, 48 (D.P.R. 2002) (internal quotation marks omitted).

Plaintiffs flunk nearly every factor of this test. Despite frequent references to a "contract" or "contractual relationship," Plaintiffs offer very few details about the nature of the

contract itself.[19] Most importantly, Plaintiffs fail to give any dates pertaining to the contract. They do not offer any clues as to when the contract began, when it was in effect, or the agreed-upon termination date—or lack thereof. Thus, no liability can lie, as the underlying contract, as alleged, "has no fixed period of time." A.M. Capen's Co., 200 F. Supp. 2d at 48.

Furthermore, Plaintiffs also fail to specify who, exactly, allegedly interfered with the contract, and they do not allege that they did so with knowledge of the contract or that it would cause injury to Plaintiffs. While we accept all well-pleaded facts as true, "trial judges are not mind readers," and Plaintiffs simply have not alleged sufficient facts to state this claim. Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 73 (1st Cir. 2011).

Given the four years and countless billable hours that have passed since the original filing of the Commonwealth case, we suspect that the only winners so far have been Plaintiffs' attorneys. However, we remind the parties that this court may impose sanctions upon an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" under 28 U.S.C. § 1927. "Litigation conduct qualifies as 'vexatious' if it is 'harassing or annoying, regardless of whether it is intended to be so.'" Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228,

---

[19] Plaintiffs state that the suit in state court involved a "claim for commissions due on a contract for recruiting services" for DFC, (Docket No. 5 at 14), and twice mention in passing a "Confidential Contract Letter with DFC," (Id. at 17), but never return to elaborate on the subject. One sentence speaks of "search and recruiting services which BSG had . . . performed pursuant to its contract with [DFC]," (Id. at 19), but beyond these vague references, Plaintiffs offer no further information. In fact, the two-and-a-half page portion of their Amended Complaint devoted to the "Tortuous Intervention with Contractual Relationship" claim offers only two paragraphs of information remotely relevant to the claim, instead offering a detailed discussion of attorney conduct during the Commonwealth case and a summary of the recent year-end bonuses of DFC officers and general counsel.

Civil No. 11-1565 (JAF)                                                                                  -19-

Civil No. 11-1565 (JAF) -19-

245–46 (1st Cir. 2010) (quoting Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990)).[20] This case, at the very least, borders on vexatious.

## V.

## **Conclusion**

Given the foregoing, we hereby **GRANT** the pending motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) (Docket Nos. 20; 30). We **DISMISS WITH PREJUDICE** all claims.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 30th day of November, 2011.

s/ José Antonio Fusté
JOSE ANTONIO FUSTE
U.S. District Judge

---

[20] We also remind the parties of 42 U.S.C. § 1988, which grants this court discretion to award reasonable attorney's fees to prevailing parties in civil rights suits. Awarding fees to a prevailing defendant, although rare, may occur "'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" Rossello-Gonzalez v. Acevedo-Vila, 483 F.3d 1, 6 (1st Cir. 2007) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)).